**Entered on Docket**
**July 06, 2012**
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA




**Signed and Filed: July 6, 2012**

**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>ZIBA SOHAEI aka ZIBA POURIAN aka SOHAEI INTERIOR DESIGN,<br><br>Debtor. | Bankruptcy Case No. 10-14387<br><br>Chapter 7 |
| ELAINE BANDALIN,<br><br>Plaintiff,<br><br>v.<br><br>ZIBA SOHAEI aka ZIBA POURIAN aka SOHAEI INTERIOR DESIGN,<br><br>Defendant. | Adversary Proceeding No. 11-1040 |

**MEMORANDUM DECISION RE CERTAIN ELEMENTS OF NONDISCHARGEABILITY UNDER SECTION 523(a)(2)(A)[1]**

**I. INTRODUCTION[2]**

The Plaintiff, Elaine Bandalin ("Bandalin"), filed a complaint on February 19, 2011, against Debtor Ziba Sohaei ("Sohaei"), seeking to determine nondischargeability of her claim

[1] Unless otherwise indicated, all chapter, section, and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

[2] This Memorandum Decision constitutes the court’s findings of fact and conclusions of law pursuant to Rule 7052(a).

against Sohaei under section 523(a)(2)(A). The court bifurcated the adversary proceeding to address the issue of fraud first, leaving damages to be resolved at a later stage, if necessary. In connection with establishing the elements of fraud under section 523(a)(2)(A), Bandalin filed a motion for partial summary judgment that was granted in part and denied in part. The court held that, as a matter of law and undisputed fact, the following elements of a section 523(a)(2)(A) nondischargeability claim existed: that representations contained in written 2006 statutory disclosures signed by Sohaei were material and false, that Bandalin justifiably relied on these representations, and that Bandalin was damaged as a result of these representations. (Order Granting in Part and Denying in Part Plaintiff's Motion for Partial Summary Judgement, AP No. 11-1040, Docket No. 87). The court reserved for trial the following two issues:

(1) Whether Sohaei herself made the false representations of material fact; and

(2) Whether Sohaei intended to deceive Bandalin.

A trial was conducted on June 11 and June 12, 2012, on the two issues above, and the court took the matter into submission.

For the reasons stated below, the court finds that Sohaei made the false representations with the intent to deceive Bandalin, and thus any money judgment arising from this cause of action will be nondischargeable under section 523(a)(2)(A). Further proceedings will be held to determine the amount of damages.

**II. FACTUAL BACKGROUND**

In October of 2004, Sohaei purchased a home at 32 Marina



Case: 11-01040 Doc# 98 Filed: 07/06/12 Entered: 07/06/12 17:35:05 Page 2 of 11

Boulevard ("32 Marina" or “the home”) in San Rafael for $950,000. She was represented by a real estate agent she had worked with in the past, Vivian Vosu ("Vosu"). The various disclosures Sohaei received related to the 2004 purchase included a description of materials from the original builders in 1956 (Exhibit 2), a 2004 Natural Hazards Disclosure Statement (Exhibit 3), a Real Estate Transfer Disclosure Statement (Exhibit 4), and a Supplement to the Real Estate Transfer Disclosure Statement (Exhibit 5)(collectively the “2004 disclosures”). Sohaei acknowledged receiving these materials by initialing and signing the documents as the buyer in the transaction. There were also two inspection reports done in connection with the sale in 2004, including a Gordon & Hinkley Structural Pest Control report (Exhibit 6) and an Amerispec Home Inspection Services report (Exhibit 7) (collectively the “2004 inspection reports”). Sohaei also signed and acknowledged receiving both reports.

The 2004 disclosures and 2004 inspection reports pointed to several areas of concern, including that the home was built on fill and semi-fluid San Francisco Bay mud, that there had been previous water intrusion in and under the home, and that there was substantial settling of the home. The Real Estate Transfer Disclosure Statement and the Amerispec inspection report also noted visible sloping of the floors in the home and the existence of a sump pump. Bandalin was aware of some sloping; she was unaware of the sump pump.

In February of 2005, Sohaei applied for a building permit for remodeling 32 Marina. She did extensive remodeling throughout the home. After remodeling the home, Sohaei discussed selling the



Case: 11-01040 Doc# 98 Filed: 07/06/12 Entered: 07/06/12 17:35:05 Page 3 of 11

home with Vosu in early 2006. At the meeting, Vosu told Sohaei that she must disclose all the information she had on the home and must give all the 2004 disclosures and 2004 inspection reports to the agent representing her. Sohaei chose not to use Vosu as her agent for the sale of 32 Marina, and eventually signed a listing agreement to sell the home for $2.395 million in March 2006 with a different real estate agent, Teresa Tuema. Sohaei later terminated the contract with Tuema.

In September 2006, Peter Narodny ("Narodny"), a real estate agent, called Sohaei regarding the 32 Marina listing. After a discussion over the phone and an in-person meeting at 32 Marina, Sohaei agreed to lower the price to $1.85 million, and signed a listing agreement with Narodny on September 6, 2006. Although Sohaei testified that she made the 2004 disclosures and 2004 reports available to Narodny at their meeting, the evidence showed that her story was inconsistent and that the 2004 documents were withheld from Narodny and Jill Hill, Bandalin's real estate agent during the 2006 sale. On September 14, 2006, Bandalin submitted an offer to purchase 32 Marina for $1.8 million, and accepted a counteroffer from Sohaei a day later for the list price of $1.85 million. The sale closed on October 13, 2006.

Bandalin demonstrated in a previous hearing that she sustained some damage due to the misrepresentations Sohaei made in three disclosure forms that were given to Bandalin and her agent in 2006 during the sale process: the 2006 Real Estate Transfer Disclosure Statement (Exhibit 18), the Seller Property Questionnaire (Exhibit 19), and the Supplemental Statutory and Contractual Disclosures (Exhibit 20)(collectively the “2006

disclosures"). Among the material misrepresentations Sohaei made, she omitted disclosing that there was a sump pump in the home, that the home was built on fill, and that she had 2004 disclosures and 2004 inspection reports regarding the home. While Narodny filled in a few comments on the 2006 disclosures, including the address of the home at the top of the Real Estate Transfer Disclosure Statement, Sohaei initialed and signed all three 2006 disclosure forms.

## III. DISCUSSION

Five elements must exist for nondischargeability under section 523(a)(2)(A): (1) that the debtor made the representations; (2) that she knew they were false; (3) that she made them with the intention and purpose of deceiving the creditor; (4) that the creditor relied on such representations; and (5) that the creditor sustained loss and damage as the proximate result of such representations. Citibank v. Eashai (In re Eashai), 87 F.3d 1082, 1086 (9th Cir. 1996); Ghomeshi v. Sabban (In re Sabban), 384 B.R. 1, 5 (BAP 9th Cir. 2008), aff'd, 600 F.3d 1219 (9th Cir. 2010). A creditor must show actual fraud by a preponderance of the evidence. See Grogan v. Garner, 498 U.S. 279, 286 (1991). The evidence and arguments submitted by both parties establish the two elements for fraud reserved for trial under section 523(a)(2)(A): that Sohaei made the false representations on the 2006 disclosures and that she had the intention and purpose of deceiving Bandalin.

### A. Sohaei Made the False Representations During the 2006 Sale of 32 Marina to Bandalin

Sohaei's testimony that she did not make the false



Case: 11-01040 Doc# 98 Filed: 07/06/12 Entered: 07/06/12 17:35:05 Page 5 of 11

representations in the 2006 disclosures is not credible. Further, Sohaei not only withheld the 2004 disclosures and 2004 reports from Bandalin, she made the material false representations in the 2006 disclosures.

Sohaei testified that Narodny filled out the three 2006 disclosures for her while speaking with her over the phone because she did not read any of the documents in 2004 or in 2006, and thus she had to rely on Narodny to fill out the forms. Vosu, Sohaei's agent in 2004 for the purchase of 32 Marina, reviewed the disclosure documents and the inspection reports with Sohaei. Sohaei acknowledged receipt of the information, so even if she had not read the 2004 disclosures and reports, she at least knew that the 2004 disclosures and reports existed. Also, due to her extensive remodeling of the home, Sohaei would have been more familiar than Narodny with at least some of the items listed on the 2006 disclosure forms, such as whether there was settling in the home or if there were room additions and structural modifications made without necessary permits or not in compliance with building code. Therefore, her alleged reliance on Narodny to fill out the forms is not credible.

In addition, Sohaei's account of giving the 2004 disclosures and 2004 reports to Narodny was inconsistent. She stated that when they discussed the listing, she gestured toward a 2004 Remax file that she left on a counter that contained the 2004 disclosures and reports. However, later she changed her story to say that there were two files, one file with copies from Vosu and one file with the originals. Sohaei also said she brought the original 2004 files to 32 Marina because Vosu told her over the



Case: 11-01040 Doc# 98 Filed: 07/06/12 Entered: 07/06/12 17:35:05 Page 6 of 11

phone that she had to give the 2004 files to the new agent representing her, but that reason is not credible because Vosu then met her at 32 Marina, supposedly bringing another copy of the 2004 documents, assuming Sohaei would list the home with her. According to both Narodny and Jill Hill, Bandalin's real estate agent, neither of them saw the 2004 disclosures or inspection reports. Narodny never had access to the 2004 disclosures and reports during the course of the 2006 sale of 32 Marina.

Lastly, Sohaei acknowledged having a part in answering the questions. She claimed that Narodny called her on the phone to discuss the forms, and that she had given him answers to the questions that she knew, but directed him towards the home and the 2004 files for the questions she did not know. Regardless of whether the conversation occurred over the phone or in person (as Narodny contends), Sohaei had a duty to answer the questions on the disclosures correctly, such as whether there were additional inspection reports. Sohaei did not contend that Narodny changed her answers, failed to ask her any of the questions on the disclosures, or omitted any answers she gave him. Since Narodny did not otherwise have access to the 2004 disclosures and 2004 reports, there is no doubt that Sohaei was the source of the misrepresentations on the 2006 disclosures, regardless of who actually made the check marks and comments on the disclosure forms. In addition, even if Sohaei did not read the 2004 disclosures and reports, which the court doubts, she knew the information she received in 2004 was very important, but did not give the 2004 disclosures and reports to Bandalin during the 2006 sale transaction.



Case: 11-01040 Doc# 98 Filed: 07/06/12 Entered: 07/06/12 17:35:05 Page 7 of 11

**B. Sohaei Made the False Representations with the Intention and Purpose of Deceiving Bandalin**

Intent to defraud is a question of fact. Cowen v. Kennedy (In re Kennedy), 108 F.3d 1015 (9th Cir. 1997). To find the existence of intent to defraud or implied bad faith, the court looks at a totality of the circumstances. Anastas v. Am. Savs. Bank (In re Anastas), 94 F.3d 1280, 1286 n3 (9th Cir. 1996); Am. Express Travel Related Servs. Co. v. Hashemi (In re Hashemi), 104 F.3d 1122 (9th Cir. 1997). When looking at the existence of fraudulent intent, the court considers circumstantial evidence. Household Credit Servs. v. Ettell (In re Ettell), 188 F.3d 1141, 1145 (9th Cir. 1999); see Citibank v. Eashai (In re Eashai), 87 F.3d at 1090 ("Since a debtor will rarely admit to his fraudulent intentions, the creditor must . . . establish the subjective intent fo the debtor through circumstantial evidence."). In addition, a strong economic incentive to deceive can be a consideration when finding intention to defraud. See Locke v. Milner (In re Locke), 205 B.R. 592, 597 (BAP 9th Cir. 1996)(holding that the debtor had intent to deceive because his financial circumstances showed a "strong economic incentive to deceive"). Lastly, reckless disregard for the truth of a representation satisfies the element that the debtor made an intentionally false representation. See Anastas v. Am. Savs. Bank (In re Anastas), 94 F.3d at 1286; Advanta Nat'l Bank v. Kong (In re Kong), 239 B.R. 815, 826 (BAP 9th Cir. 1999)(holding that while making a materially false statement, "reckless indifference to the actual facts, without examining the available source of knowledge which lay at hand," is sufficient for fraudulent

misrepresentation).

Circumstances of the sale support the finding of an intent to commit fraud. When Sohaei asked Vosu to discuss listing 32 Marina for sale in 2006, Vosu testified that she told Sohaei that Sohaei had to disclose all the information she had on the home. After that conversation, Sohaei elected to go with another real estate agent for the sale, despite having a long working relationship with Vosu, who had also represented Sohaei's family members in the past. This supports the finding that Sohaei did not want Vosu to disclose the information she received in 2004, particularly since the agent she ended up using, Narodny, testified that he never saw the 2004 disclosures and 2004 reports.

In addition, after listing the property at $2.395 million for several months, Sohaei agreed to drop the price by $545,000, which according to her testimony, was because Narodny told her the property was not in a great location compared to her other properties. This quick and significant price drop does not add up with her claim that she did not want to sell and that Narodny pressured her into selling, suggesting that Narodny's reason was not the only reason Sohaei was willing to drop the price. Even with the price reduction, Sohaei stood to sell the property for almost twice the amount she purchased the property for, which was a strong economic incentive for her to withhold information about defects in the home that might threaten a sale, particularly if she felt financial pressure from having invested money into the remodeling.

Even if there were no hints of fraud, which is not the case here, the facts show strong evidence of a reckless disregard for

truth. At the time of the 2006 sale, Sohaei knew she had access to the 2004 disclosures and 2004 reports and knew that she had to disclose them. Even if the documents were available to Narodny as Sohaei testified, simply pointing to the documents for her agent would not be enough to fulfill her disclosure responsibilities. She, not the real estate agent, was required to fill out the seller's Real Estate Transfer Disclosure Statement. If she truly never read any documents in the 2004 or the 2006 transaction, then she answered questions on the 2006 disclosure forms with reckless disregard for the truth of her representations, especially since she had access to the 2004 disclosures and reports if the documents were indeed readily available at 32 Marina. As the seller with a duty to disclose, she should have at least checked the truth of her representations in the 2006 disclosure forms with the 2004 disclosures and 2004 reports that were available to her about the condition of the home to make sure she was properly representing the condition of the home to the buyer. Sohaei's behavior suggests that, at the very least, she was acting in reckless disregard for truth.

## IV. CONCLUSION

Based on the foregoing reasons, Bandalin's claim against Sohaei shall be nondischargeable under section 523(a)(2)(A). The two remaining elements of fraud in this case were proven by a preponderance of the evidence: that Sohaei made the false representations and that she had the intention of deceiving Bandalin. The court will hold a status conference on July 27, 2012 at 11:30AM to consider further proceedings to determine damages. Both counsel should be prepared to discuss the proper

measure of damages, the number of witnesses who will testify, the amount of time to be reserved for trial, and when the trial should be held.

**END OF MEMORANDUM DECISION**



Case: 11-01040 Doc# 98 Filed: 07/06/12 Entered: 07/06/12 17:35:05 Page 11 of 11